IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CIVIL ACTION NO. 3:16-cv-30086 |
| Plaintiff, | ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| BAYSTATE MEDICAL CENTER, INC.; BAYSTATE HEALTH, INC. | ) ) ) | |
| Defendants. | ) ) ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of religion and retaliation, and to provide appropriate relief to Stephanie Clarke ("Clarke") who was adversely affected by such practices. As more fully described below, the U.S. Equal Employment Opportunity Commission (the "Commission") alleges that Defendants, Baystate Medical Center, Inc. ("BMC"); and Baystate Health, Inc. ("Baystate Health"), failed to accommodate Clarke's religious beliefs. The Commission further alleges that Defendants suspended Clarke without pay and terminated her employment because of her religion and her complaints that she was being discriminated against because of her religious beliefs. In the alternative, the Commission alleges that Defendants constructively discharged Clarke when they informed her that they were interpreting her refusal to comply with company policies that violated Clarke's religion as a resignation. The Commission further alleges that Defendants designated Clarke as ineligible for

re-hire because of her complaints that Defendants had discriminated against her because of her religious beliefs.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and continue to be committed within the jurisdiction of the United States District Court for the District of Massachusetts, Springfield Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendants have continuously been doing business in the commonwealth of Massachusetts and in the city of Springfield, and have continuously had at least fifteen (15) employees.

5. At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6.      More than thirty days prior to the institution of this lawsuit, Stephanie Clarke filed a charge with the Commission alleging violations of Title VII by Defendants.

7.      On April 6, 2016, the Commission issued to Defendants a Letter of Determination on Clarke's charge finding reasonable cause to believe that Defendants violated Title VII with respect to Clarke, and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.      The Commission engaged in communications with Defendants to provide Defendants the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9.      The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

10.      On April 20, 2016, the Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

11.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12.  From at least September 2015 through the present, Defendants have engaged in unlawful employment practices at their facilities in Massachusetts, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1) and Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a), with respect to Clarke.  These unlawful employment practices include:

a)  Defendants have maintained an influenza immunization policy that requires all of Defendants' employees, active physicians, contracted personnel, students, volunteers and

3

vendors working at all of Defendants' facilities to receive a flu vaccination annually. Individuals who receive the vaccine are also required, under the policy, to have a distinct sticker placed on their employee badge.

b)  Under Defendants' influenza immunization policy, any employee who declines to be vaccinated, for any reason, is required to wear a mask at all times while working at Defendants' facilities.

c)  Employees who fail to comply, for any reason, with Defendants' influenza immunization policy, are placed on unpaid leave until such time that the individual either complies with the policy or flu season terminates.  During such leave, the employee's job is not protected, and may be filled by someone else.

d)  Defendants hired Clarke in approximately December 2014, as a Talent Acquisition Consultant in BMC's human resources department.

e)  While employed by Defendants, Clarke's office was located in BMC's administrative services building.

f)  Clarke was not required to have patient contact, or to work in areas of BMC where patients were seen and treated, as part of her job duties and responsibilities.

g)  Clarke is an adherent of the Christian faith.  In 2007, Clarke began reading the Bible as the inerrant word of God, and renewed her efforts to live according to it.  Since that time, and as a result of her reading of scripture, Clarke believes her body is a temple.  Because of her religious belief, Clarke rejects injections of any kind, as well as drugs and vaccines.

h)  In approximately October 2015, Clarke's supervisor informed Clarke and her colleagues that Defendants would require all employees to receive the influenza vaccine by

4

November of that year.  At that time, Clarke informed her supervisor that she did not intend to be vaccinated.

i)  Subsequently, Clarke completed a form for Defendants indicating that she was declining the influenza vaccine because of her religious beliefs.  Thereafter, Defendants provided Clarke with a mask and instructed her to wear it at all times while working in Defendants' facilities.

j)  On approximately November 2, 2015, Clarke began wearing the mask provided by Defendants while at work.   Applicants and others Clarke spoke to, both over the telephone and in-person, complained to her that they could not understand her while she was wearing the mask.  On several occasions, while speaking, Clarke pulled her mask down, away from her mouth, so that she could speak clearly and ensure that others could hear and understand her.  Clarke's supervisor wrote her up for failing to wear the mask correctly.

k)  When Clarke was at work but was not speaking, she wore her mask as directed.

l)  Clarke brought the concern about her ability to effectively communicate orally with applicants, references, and managers to the attention of Defendants.

m)  On approximately November 19, 2015, Defendants suspended Clarke from work, without pay and without job protection because her supervisor had observed her without her mask worn over her mouth and nose.

n)  That same day, Clarke complained to Defendants that she believed her right to be free from religious discrimination was being violated by Defendants and asked for help finding an accommodation to the influenza immunization policy that would not interfere with her ability to perform her job.

5

o) On approximately December 3, 2015, Clarke informed Defendants that she had been informed by the Senior Vice President of Human Resources that she could not return to work until she either received the flu vaccine or agreed to wear the mask at all times. Clarke stated that she would not agree to be vaccinated and that she was unable to wear the mask at all times because it was preventing her from completing her job responsibilities.

p) On approximately December 4, 2015, Defendants emailed Clarke and informed her that they interpreted her email as a resignation, effective immediately, and terminated her employment.

q) In response to Defendants December 4th email, Clarke again stated that candidates and others could not understand her when she spoke to them while wearing the mask and that Defendants' requirement prevented her from performing her job effectively.  Clarke then indicated that she would not be returning to BMC.

r) In Clarke's personnel file, Defendants indicated that Clarke was not eligible for re-hire.

s) Based on the allegations as set forth herein, Defendants failed to accommodate Clarke's religious beliefs.  The accommodation Defendants provided, requiring Clarke to wear a mask at all times, was not an effective or reasonable accommodation to Defendants' influenza immunization policy because wearing the mask significantly interfered with Clarke's ability to perform the essential functions of her job.

t) Because Clarke's job did not require her to have patient contact, it would not have been an undue hardship for Defendants to exempt Clarke from the flu vaccine requirement, or to permit her to remove the mask while speaking.

13.     Based on the allegations set forth herein, Defendants discriminated against Clarke, on the basis of her religion, when they failed to accommodate her, terminated her employment or, in the alternative, constructively discharged Clarke.

14.     Based on the allegations set forth herein, Defendants retaliated against Clarke because of her complaints of religious discrimination, when they terminated her employment and indicated that she was ineligible for re-hire.

15.     The effect of the practices complained of above has been to deprive Clarke of equal employment opportunities and otherwise adversely affect her status as an employee because of her religion and religious practice.

16.     The unlawful employment practices complained of above were done with malice or with reckless indifference to Clarke's federally protected rights.

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, successors, assigns, and all persons in active concert or participation with them, from discriminating against applicants and current or future employees based on their religious beliefs and/or their refusal to violate their religious beliefs.

B.      Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, successors, assigns, and all persons in active concert or participation with them, from retaliating against applicants and current or future employees based on their opposition to any conduct made unlawful by Title VII.

C.     Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees, including effective policies

prohibiting religious discrimination and allowing for religious accommodation, all of which eradicate the effects of Defendants' past and present unlawful employment practices.

       D.     Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees, including effective policies prohibiting retaliation, all of which eradicate the effects of Defendants' past and present unlawful employment practices.

       E.     Order Defendants to make whole Clarke, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and frontpay, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

       F.     Order Defendants to make whole Clarke by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job search expenses, in amounts to be determined at trial.

       G.     Order Defendants to make whole Clarke, by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

       H.     Order Defendants to pay Clarke punitive damages for their malicious and reckless conduct described above, in an amount to be determined at trial.

       I.     Order Defendants to designate Clarke as eligible for re-hire.

       J.     Grant such further relief as the Court deems necessary and proper in the public interest.

       K.     Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: August 26, 2016

.

Respectfully submitted,

P. David Lopez
General Counsel

James L. Lee
Deputy General Counsel

Gwendolyn Y. Reams
Associate General Counsel

 /s/ Jeffrey Burstein
Jeffrey Burstein
Regional Attorney
Jeffrey.burstein@eeoc.gov

 /s/ Nora E. Curtin
Nora E. Curtin
Supervisory Trial Attorney
Nora.curtin@eeoc.gov

 /s/ Daniel Seltzer
Daniel Seltzer
Trial Attorney
Equal Employment Opportunity
Commission
New York District Office
33 Whitehall Street, 5th Floor, Room 521
New York, NY 10004
Tel: 212-336-3701
Fax: 212-336-3623
Email: daniel.seltzer@eeoc.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 26, 2016, I filed this document through the CM/ECF system, which will send a notice of electronic filing to all parties.


<u>s/ Daniel Seltzer</u>
DANIEL SELTZER