UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) ) Civil Action No. 3:16-cv-30086-MGM ) |
| BAYSTATE MEDICAL CENTER, INC., ET AL., | ) ) |
| Defendants | ) |

<u>MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO RESPOND TO AND PRODUCE DOCUMENTS RESPONSIVE TO PLAINTIFF'S FIRST SETS OF DISCOVERY REQUESTS</u>
(Dkt. No. 40)

ROBERTSON, U.S.M.J.

In this employment discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), asserts claims on behalf of Stephanie Clarke. The complaint alleges that Ms. Clarke's employment at Baystate Medical Center ("BMC") and Baystate Health Systems ("BHS") (collectively "Defendants") was terminated after she declined Defendants' free influenza vaccination on the grounds of her religious beliefs and claimed she was unable to perform the duties of her job adequately while wearing a mask.

Before the court is the EEOC's motion to compel answers to Interrogatory Nos. 3, 4, and 5, which were served on Defendants pursuant to Fed. R. Civ. P. 33(a). The EEOC further seeks to compel defendants to produce documents in response to its Rule 34 request numbers 13, 16, 17, 18, 19, 20, 21, 22, 38, 39, 40, 41, and 44 (Dkt. No. 40). *See* Fed. R. Civ. P. 37(a)(3)(B). Defendants have objected to EEOC's requests on various grounds.

1

After a hearing and for the following reasons, Plaintiff's motion to compel is ALLOWED to the extent described herein.

I. ALLEGATIONS IN THE AMENDED COMPLAINT

The following brief summary of the allegations in the case is provided as background for the discussion of the parties' discovery disputes. Defendants have maintained an influenza immunization policy that requires "all of Defendants' employees, active physicians, contracted personnel, students, volunteers and vendors [hereinafter collectively "employees" or "personnel"] working at all of Defendants' facilities to receive a flu vaccination annually" (Dkt. No. 10 at ¶ 12(a)). Defendants' policy says that "any employee who declines to be vaccinated, for any reason, is required to wear a mask at all times while working at Defendants' facilities" (*id.* at ¶ 12(b)). Employees who fail to comply with Defendants' influenza policy are placed on unpaid leave until the individual either complies with the policy or flu season ends (*id.* at ¶ 12(c)). The employee's job is not protected during the unpaid leave (*id.*).

In December 2014, Defendants hired Ms. Clarke as a talent acquisition consultant in BMC's human resources department (*id.* at ¶ 12(d)). Ms. Clarke did not have patient contact nor did she work in areas of BMC where patients were seen and treated (*id.* at ¶ 12(e), (f)). Ms. Clarke "is an adherent of the Christian faith" who, since 2007, has believed that "her body is a temple" and, accordingly, has rejected "injections of any kind, as well as drugs and vaccines" (*id.* at ¶ 12(g)). In November 2015, Ms. Clarke completed a form notifying Defendants that she was declining the influenza vaccine on religious grounds (*id.* at ¶ 12(i)). Defendants provided her with a mask and instructed her to wear it at all times while working (*id.*). Ms. Clarke began wearing the mask at work on or about November 2, 2015 (*id.* at ¶ 12(j)). Because those to whom Ms. Clarke spoke, both in person and over the telephone, complained that they were unable to

2

understand her while she wore the mask, she pulled the mask down and away from her mouth "on several occasions" while she spoke (*id.*). She wore her mask when she was not speaking (*id.* at ¶ 12(k)). Ms. Clarke notified Defendants of the mask's interference with her ability to communicate effectively (*id.* at ¶ 12(*l*)).

On or about November 19, 2015, Ms. Clarke was suspended without pay and without job protection because her supervisor had observed her not wearing the mask over her nose and mouth (*id.* at ¶ 12(m)). Ms. Clarke complained about religious discrimination and requested an accommodation to the vaccine policy that would not interfere with her ability to perform her job effectively (*id.* at ¶ 12(n)). In response to the Senior Vice President of Human Resources' notification that she could not return to work unless she was vaccinated or agreed to wear the mask at all times, Ms. Clarke indicated via e-mail that she declined vaccination and was not able to perform her job adequately while wearing a mask (*id.* at ¶ 12(o)). On December 4, 2015, Defendants notified Ms. Clarke that they interpreted her message as a resignation effective immediately, and terminated her employment (*id.* at ¶ 12(p)). Defendants further indicated that she was not eligible for re-hire (*id.* at ¶ 12(r)).

The EEOC alleges that Defendants discriminated against Ms. Clarke on the basis of her religion, retaliated against her because of her complaints of religious discrimination, and seeks damages on her behalf (*id.* at 7). In addition, it seeks equitable relief based on the allegations of religious discrimination and retaliation (*id.* at 7-8).

II. LEGAL STANDARDS FOR DISCOVERY

The EEOC seeks to compel Defendants to produce discovery to support its Title VII and Title I claims. Federal Rule of Civil Procedure 26(b)(1) provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"The party seeking information in discovery over an adversary's objection has the burden of showing its relevance." *Caouette v. Officemax, Inc.,* 352 F. Supp. 2d 134, 136 (D.N.H. 2005). "This burden is not onerous." *Aronstein v. Mass. Mut. Life Ins. Co.*, Civil Case No. 15-12864-MGM, 2017 WL 2818993, at *2 (D. Mass. June 29, 2017). "Relevance under Rule 26(b) is broadly defined, 'although it is not without "ultimate and necessary boundaries."'" *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 622 (N.D. Cal. 2013) (quoting *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006)); *see also* Fed. R. Civ. P. 26(b)(2)(C). "Once the possibility of relevance is shown, the burden shifts to the party opposing disclosure to show that the discovery is improper." *Aronstein,* 2017 WL 2818993, at *2 (citing *Diaz-Padilla v. Bristol Myers Squibb Holding Ltd. Liab. Co.,* Civil No. 04-1003(PG/GAG), 2005 WL 783076, at *2 (D.P.R. Apr. 4, 2005)); *see also BPP Retail Props., LLC v. N. Am. Roofing Servs., Inc.*, 300 F.R.D. 59, 61 (D.P.R. 2014) ("The party resisting discovery has the burden of showing 'specifically how each interrogatory is not relevant or how [the request at issue] is overly broad, burdensome, or oppressive.'") (quoting *Vázquez-Fernández v. Cambridge Coll., Inc.*, 269 F.R.D. 150, 155-56 (D.P.R. 2010)).

In order to determine what discovery is relevant to the EEOC's claims, it is necessary to understand what it is required to prove. "Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any employee on the basis of religion." *Robinson v. Children's Hosp. Bos.*, Civil Action No. 14-10263-DJC, 2016 WL 1337255, at *5 (D. Mass. Apr. 5, 2016), *appeal dismissed sub nom. Robinson v. Children's Hosp. of Bos.,* No. 16-1495 (1st Cir.

Feb. 23, 2017) (citing 42 U.S.C. § 2000e-2). For purposes of Title VII, religion includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). "'Thus, in general terms, Title VII requires employers . . . to accommodate, within reasonable limits, the bona fide religious beliefs and practices of employees.'" *Sánchez-Rodríguez v. A. T. & T. Mobility P.R., Inc.*, 673 F.3d 1, 12 (1st Cir. 2012) (quoting *E.E.O.C. v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.*, 279 F.3d 49, 55 (1st Cir. 2002)). The EEOC advances its employment discrimination claims under three theories based on Ms. Clarke's religious beliefs: (1) disparate treatment; (2) failure to accommodate; and (3) retaliation (Dkt. No. 10 at 7). Though each of these theories of employment discrimination requires proof of different elements, *see, e.g., Sánchez-Rodríguez v. AT & T Mobility Puerto Rico, Inc.*, 673 F.3d 1, 12-13 (1st Cir. 2012); *Kosereis v. Rhode Island*, 331 F.3d 207, 212-13 (1st Cir. 2003), the "'ultimate touchstone'" of the analysis under all three theories is "whether the employer's actions were improperly motivated by discrimination." *Kosereis*, 331 F.3d at 213-14 (quoting *Fite v. Digital Equip. Corp.*, 232 F.3d 3, 7 (1st Cir. 2000)).

III. ANALYSIS

Defendants have declined to answer Plaintiff's interrogatories and requests to produce documents that seek: (A) so-called comparator information; (B) material concerning Defendants' affirmative defenses; and (C) information concerning Defendants' influenza immunization and teleworking policies. These requests and Defendants' objections thereto will be discussed in turn.

A. The EEOC's Requests Seeking Comparator Information (Interrogatory Nos. 3, 4, and 5 and Document Request Nos. 38, 39, 40, and 41).

Because an employer's discriminatory motive or pretext may be proved by evidence demonstrating that a plaintiff "was treated differently from other similarly situated employees," *Kosereis*, 331 F.3d at 214, "'[d]iscovery is frequently sought regarding similarly situated employees.'" *Moreno Rivera*, 272 F.R.D. at 54 (citation omitted). "Courts have generally found such requests valid, so long as the breadth and scope are reasonably related to the party alleging discrimination." *Id.* at 54-55. *See Conward v. Cambridge Sch. Comm.,* 171 F.3d 12, 20 (1st Cir. 1999) ("[R]easonableness is the touchstone" in determining whether comparative evidence shows that other employees are similarly situated to the plaintiff. The comparison cases need not exactly mirror the plaintiff's case, but the cases must be closely analogous with regard to the relevant facts and circumstances.); *Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996) (to offer comparative evidence at trial, the plaintiff must show that "the individuals with whom he seeks to be compared have 'engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it'") (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)).

When a party seeks to discover information that implicates the privacy concerns of non-parties, "[t]he court, in deciding whether or not to allow discovery of certain information, balances Fed. R. Civ. P. 26(b)(1), 'which allows discovery relating to any relevant, non-privileged information,' and broader discovery upon a showing of 'good cause,' against the privacy interests of nonparties to the dispute." *McEvoy v. Hillsborough Cty.*, Civ. No. 09-cv-431-SM, 2011 WL 1813014, at \*6 (D.N.H. May 5, 2011). *See O'Neil v. Q.L.C.R.I., Inc.,* 750 F. Supp. 551, 556 (D.R.I. 1990). *Compare Whittingham v. Amherst Coll.,* 164 F.R.D. 124, 127-28 (D. Mass. 1995) (denying plaintiff's motion to compel production of personnel files based on

plaintiff's failure to establish their relevance to his pending race discrimination claims or that any marginal relevance outweighed the privacy interests of the individuals whose personnel files he sought).

        1.        Information concerning personnel who declined the influenza vaccine (Interrogatory No. 3 and Document Request No. 41).

Defendants have objected to the EEOC's Interrogatory No. 3, which asks Defendants to identify and provide specific information about all personnel who were not immunized against influenza, on the grounds that the request seeks irrelevant and private personnel information, and is "not proportional to the needs of the litigation" (Dkt. No. 40 at 4). Defendants have also declined to produce some documents responsive to DR 41, which seeks "[a]ll lists, spreadsheets, or other comp[ilations]" in unredacted form of any of Defendants' personnel who were not immunized (Dkt. No. 40 at 8). Defendants have produced a spreadsheet (Dkt. No. 40-6) and a list (Dkt. No. 40-7) containing some information about the approximately 500 employees who refused to be vaccinated, but have declined to disclose identifying information about the employees whose information appears on the spreadsheet and list (Dkt. No. 40 at 8).

While the EEOC's Interrogatory No. 3 and the corresponding document request seek information about employees who are in one respect similarly situated to Ms. Clarke – they also declined to be vaccinated – this is a very thin reed on which to rest a discovery request of this breadth. Defendants' objections on the grounds of disproportionality and privacy have force because compliance with the EEOC's requests would require Defendants to disclose personal information concerning approximately 500 employees. *See Talavera v. Sun Maid Growers of Cal.*, Case No. 1:15-cv-00842-AWI-SAB, 2017 WL 495635, at *1 (E.D. Cal. Feb. 6, 2017) ("Under the amended Rule 26, relevancy alone is no longer sufficient to obtain discovery, the discovery requested must also be proportional to the needs of the case."). Moreover, the EEOC's

contentions regarding relevance may fairly be described as speculative. The EEOC seeks to discover whether other employees had difficulty communicating while wearing a mask on the theory that any such complaints by others would bear on the reasonableness of the accommodation, and the EEOC seeks to determine whether employees who declined to be vaccinated for some reason other than their religious beliefs were treated differently than Ms. Clarke. To balance concerns about overbreadth and privacy with a party's right to obtain relevant information in cases involving allegations of company-wide policies and large numbers of employees, some courts have found random sampling a reasonable means of complying with Rule 26's proportionality directive. *See Fed. Trade Comm'n v. Directv, Inc.*, Case No. 15-cv-01129-HSG (MEJ), 2016 WL 3351945, at *2 (N.D. Cal. June 9, 2016). Here, too, in the court's view, "[t]he right balance is struck by providing [the EEOC] discovery of a statistically significant sample." *Quintana v. Claire's Boutiques, Inc.*, Case No. 5:13-cv-00368-PSG, 2014 WL 234219, at *2 (N.D. Cal. Jan. 21, 2014) (ordering defendants to provide information for a 20% sample of the class members and allowing the parties to determine the particulars of how to select the sample). This approach makes sense in this case where the EEOC's claims are directed at a company-wide policy, but there are privacy concerns and the relevance of the information sought has not been completely demonstrated. The court finds that disclosure of identifying information as to 75 employees strikes an appropriate balance between the EEOC's need for information, the overbreadth of its discovery requests, and the privacy of individuals.

    The court leaves it to the parties to establish the parameters for selecting the sample. The parties shall meet and establish the sample's parameters and produce the sample of 75 individuals.

Once the sample of 75 individuals is produced, Defendants are hereby ordered to respond to **Interrogatory No. 3** by providing the EEOC with the following information for the 75 sample members: name; title; department; date(s) of declination of the vaccine; and reason(s) given for declining. Defendants are further ordered to regenerate the spreadsheet (Dkt. No. 40-6) and the list (Dkt. No. 40-7) that were produced in response to **DR 41** with the names of the 75 sample members who appear on those documents. Where the requested information is stored electronically, it is to be provided to the EEOC in the electronic form the EEOC has requested (Dkt. No. 41-9 at 2, 5). *See* Fed. R. Civ. P. 34(b)(1)C) and (b)(2)(E). To safeguard the privacy interests of the 75 members of the sample, the parties are ordered to file a proposed protective order no later than **November 6, 2017**.

      2.    Discipline information concerning personnel who were not immunized (Interrogatory No. 4 and Document Requests Nos. 38 and 39).

Interrogatory No. 4 asks Defendants to identify all personnel who were not vaccinated against the influenza vaccine and were disciplined for non-compliance with Defendants' influenza immunization (Dkt. No. 40 at 4). DR 38 requests the complete personnel files of these individuals (*id.* at 6). DR 39 requests the complete personnel files of the personnel who were not vaccinated and who were not disciplined (*id.*). Defendants' objections to these requests track those raised for Interrogatory No. 3 (*id.*).

The EEOC has sustained its burden of demonstrating the relevance of the information requested in Interrogatory No. 4 for all personnel who were similarly situated to Ms. Clarke; that is, those individuals who, like her, declined the influenza vaccine and were disciplined or terminated. *See Moreno Rivera*, 272 F.R.D. at 54-55. This information is to be produced in addition to information about the 75 randomly identified individuals. Although Defendants object based on the fact that different personnel had different supervisors (Dkt. No. 43 at 13-14),

9

the policy at issue was applied on a company-wide basis and, when considering comparative evidence, "similarity, rather than identicality, provides the essential requirement for an analogy." *Conward,* 171 F.3d at 22. In *Anderson v. Brennan*, 219 F. Supp. 3d 252 (D. Mass. 2016), the plaintiff, who was discharged from employment as a postal service police officer for improperly securing her weapons and equipment, sued her employer alleging that her termination was due to her race and in retaliation for complaints she filed with the EEOC for race discrimination. *Id.* at 254–55. The defendant disputed the admissibility of the plaintiff's proffered evidence concerning several employees of a different race who had been disciplined less severely for misconduct equal to or greater than hers, arguing that the other employees and the plaintiff were disciplined by different supervisors, and, therefore, the other employees were not similarly situated. *Id*. at 257-58. In *Anderson,* the court found that the other employees were suitable comparators notwithstanding the fact that they were disciplined by different supervisors because whether or not an employee with a different supervisor can be used as a comparator depends on the factual circumstances of the case. *Id*. at 258-59. A reasonable fact finder could conclude that employees were similarly situated if they were disciplined by different supervisors but were still held to the same standards. *Id*. at 259.

Defendants raise a meritorious objection to DR 38, which requests the entire personnel files for the employees whose identities will be disclosed in response to Interrogatory No. 4, on the ground that it is overly broad and invasive of privacy. *See Whittingham*, 164 F.R.D. at 127 ("personnel files contain perhaps the most private information about an employee within the possession of an employer"). The EEOC has not shown that all the information contained in the comparators' personnel files is relevant or that its relevance outweighs the privacy interests of those individuals. *Id.* at 127-28. Consequently, the court orders Defendants to produce only

those documents from the files of the employees identified in response to Interrogatory No. 4 that concern the influenza vaccine policy and any discipline that resulted. If an individual declined the vaccine for medical reasons, Defendants need only state that reason. Any additional medical information is irrelevant to EEOC's case and shall be redacted.

Similarly, the EEOC has not demonstrated that the relevance of the material it seeks by DR 39, which requests the complete personnel files for all employees who were not immunized and not disciplined, outweighs the individuals' privacy interests in the contents of those files. *See Whittingham*, 164 F.R.D. at 127-28. If the EEOC's request was allowed, when combined with the material produced in response to DR 38, Defendants would be required to produce information on all 500 employees who declined the vaccine. For the reasons discussed in relation to Interrogatory No. 3 and DR 41, this request is disproportional to the needs of the case, invasive of employee privacy, and would defeat the purpose of random sampling. Consequently, the EEOC's motion to compel Defendants to respond to DR 39 is allowed only for documents that concern the influenza immunization policy contained in the personnel files of the 75 sample members who were not immunized and were not disciplined. If an individual declined immunization for medical reasons, only that fact need be disclosed. Any additional medical information must be redacted because it is not relevant.

In summary, the EEOC's motion to compel a response to **Interrogatory No. 4** is allowed for all personnel who declined influenza immunization and for whom Defendants have any record of discipline for non-compliance with the policy in effect at the time. Defendants are ordered to provide the following requested information for these individuals: name; date of suspension or placement on administrative leave; date of reinstatement or return to work (if applicable); date of termination (if applicable); and reasons for termination (if applicable). The

motion to compel a response to **DR 38** is allowed to the limited extent of the material contained in the personnel files of the employees identified in Interrogatory No. 4 that concerns Defendants' influenza immunization policy, with specific medical information, if any, redacted. The motion to compel a response to **DR 39** is allowed only for the material that concerns Defendants' influenza immunization policy contained in the personnel files of the members of the sample of 75 who were not immunized and not disciplined, with specific medical information, if any, redacted.

        3.        Information concerning personnel who declined the influenza immunization and objected to wearing a mask (Interrogatory No. 5 and Document Request No. 40).

By Interrogatory No. 5, the EEOC seeks the identities of all of Defendants' employees who were not immunized against influenza and who "expressed concern, complained, or otherwise objected to wearing a mask while at work or on duty" (Dkt. No. 40 at 5). Defendants responded to the interrogatory by stating that there was an "employee in Human Resources who was a Senior Human Resources Consultant who wore the mask for one month and then resigned her employment from Baystate" (*id.*). Defendants further indicated that "there was a nurse on Spfld 3 . . . who refused to wear a mask after declining to be vaccinated . . . [and] was sent home for violation of HR-608" (*id.*). For the reasons the court has allowed the EEOC's motion to compel Defendants to identify employees in its responses to Interrogatory Nos. 3 and 4, it allows EEOC's motion to compel Defendants to produce the names of the two individuals mentioned in its previous response to **Interrogatory No. 5.**

DR 40 is related to Interrogatory No. 5 and seeks "all documents and electronically stored information referring or relating to any of Defendants' employees" who was not vaccinated, and "expressed concern, complained, or otherwise objected to wearing a mask while at work or on

duty" (Dkt. No. 40 at 7).  Due to the privacy interests of the two individuals who are to be identified in Defendants' supplemental response to Interrogatory No. 5, the EEOC's motion to compel a response to **DR 40** is allowed only as to the documents and electronically stored information that concern the Defendants' influenza immunization policy for those two individuals.  If either individual declined immunization for medical reasons, any specifics about the medical status shall be redacted from the documents and electronically stored information that is produced.  As to any employee who is identified, Defendants should produce the relevant information, if it is stored electronically, in the form in which the EEOC has requested it.  *See* Fed. R. Civ. P. 34(b)(1)(C).

    B.    <u>EEOC's Requests for Information Concerning Defendants' Affirmative Defenses (Document Request Nos. 13, 18, 19, 20, 21 and 22).</u>

DR 13 is overbroad and is denied.  The targeted requests in DRs 18 through 22 seek "all documents and electronically stored information reflecting facts" supporting Defendants' Affirmative Defenses (Dkt. No. 40 at 9–11).  Defendants' main objection is that the requests are designed to obtain protected attorney work product (Dkt. No. 40 at 9-11; Dkt. No. 43, at 14-15). Although Fed. R. Civ. P. 26(b)(3)(B) "protect[s] against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney," Fed. R. Civ. P. 26(b)(3)(B), "not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product."  *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988).  "Were the doctrine to sweep so massively, the exception would hungrily swallow up the rule."  *Id.*  While, for the most part, the work product objection lacks merit, DR 13 is overbroad.

To the extent the EEOC seeks disclosure of the documents and electronically stored information disclosing the *facts* supporting Defendants' affirmative defenses identified in DR

13

Nos. 18 through 22, responsive documents and electronically stored information will be produced. *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession."); *Dunkin Donuts Franchised Rests., LLC v. Agawam Donuts, Inc.,* Civil Action No. 07-11444-RWZ, 2008 WL 427290, at *1 (D. Mass. Feb. 13, 2008) ("Although the work product privilege protects against the disclosure of materials prepared in anticipation of litigation, it does not typically extend to the underlying facts contained within those materials.").

Because **DR Nos. 18 through 22** are not overbroad and do not implicate disclosure of protected work product, so much of the EEOC's motion as seeks to compel the production of responsive materials is allowed.

    C.    <u>The EEOC's Request Concerning Defendants' Influenza Immunization and Teleworking Policies (Document Request Nos. 16 and 17).</u>

        1.    Influenza Immunization Policy (Document Request No. 16).

The EEOC seeks to compel Defendants to respond to DR 16, which requests "[a]ll documents used or relied upon in the development, creation, or implementation of Defendants' Influenza Immunization Policy" (Dkt. No. 40 at 11). Defendants object on the grounds that the requested documents are irrelevant and the request is vague, over-broad, unclear, and overreaching "in that certain documents, if they existed, would be the product of a quality assurance/medical staff committee and thus privileged from production" (*id.*). As the party asserting the privilege under Mass. Gen. Laws ch. 111 § 205(b), Defendants bear the burden of producing evidence "tending to show (1) that the information and records sought are 'necessary to comply' with risk management and quality assurance programs established by the [Board of Registration in Medicine] and (2) that the information and records 'are necessary to the work

product' of 'medical peer review committees.'" *Carr v. Howard*, 689 N.E.2d 1304, 1309 (Mass. 1998) (quoting Mass. Gen. Laws ch. 111, § 205(b)). *See* Fed. R. Civ. P. 26(b)(5)(A). Defendants have failed to sustain their burden of establishing that the requested material is privileged.

The EEOC has demonstrated that the requested documents are relevant on the issue of whether requiring all employees, including those who had no patient contact, to wear masks was a reasonable accommodation to a vaccination objection on religious grounds. *See Unión Independiente,* 279 F.3d at 55 (Title VII requires an employer "to accommodate [the belief or practice], within reasonable limits.").

Because the EEOC's request is clear and not overly broad, and Defendants have not sustained their burden of demonstrating that the request seeks privileged documents of a quality assurance/medical staff committee, so much of the EEOC's motion as seeks to compel a response to **DR 16** is allowed.[1]

        2.       Teleworking Policies (Document Request No. 17).

DR 17 asks Defendants to produce "[a]ll documents or electronically stored information reflecting or referring to Defendants' rules, policies, and procedures relating to teleworking or working from home" that were in effect from September 2013 to the present (Dkt. No.. 40 at 12). Defendant has produced the policy for the period Ms. Clarke was employed, from December 2014 until December 2015 (Dkt. No. 10 ¶ 12(d), (p); Dkt. No. 40 at 12; Dkt. No. 43 at 16). Changes to the policy, if any, might bear on the reasonableness of Ms. Clarke's request to telework as a reasonable accommodation. *See Unión Independiente,* 279 F.3d at 55.

---

[1] Defendants indicated that they would provide the materials requested in DR 44.

Consequently, so much of the EEOC's motion to compel as seeks teleworking policies in effect from September 2013 to the present is allowed to the extent they have not been produced.

IV. CONCLUSION

For the aforementioned reasons, the EEOC's motion to compel is allowed in part, and denied in part as follows:

**Interrogatory No. 3:** Allowed only as to information about the 75 sample members. The parties are to agree to the parameters of the sample and the sample of 75 members is to be produced on or before **November 20, 2017**.

**Interrogatory No. 4:** Allowed as to all the requested information.

**Interrogatory No. 5:** Allowed.

**DR 13:** Denied.

**DR 16:** Allowed.

**DR 17:** Allowed.

**DR 18, 19, 20, 21, 22:** Allowed to the extent documents and electronically stored information disclose the facts supporting Defendants' affirmative defenses that are identified in these document requests.

**DR 38:** Allowed only as to paper documents and electronically stored information that concern Defendants' influenza immunization policy, including any records related to discipline, in the personnel files of the employees identified in Interrogatory No. 4. If a stated reason for declining immunization was medical, only that fact is to be disclosed. Any specific medical information is to be redacted.

**DR 39:** Allowed only as to paper documents and electronically stored information that concern Defendants' influenza immunization policy in the personnel files of the 75 sample

members.  If a stated reason for declining immunization was medical, only that fact is to be disclosed.  Any specific medical information is to be redacted.

**DR 40:**  Allowed only as to paper documents and electronically stored information that concern Defendants' influenza immunization policy for the two individuals identified in Defendants' answer to Interrogatory No. 5, including any disciplinary records.  If a stated reason for declining immunization was medical, only that fact is to be disclosed.  Any specific medical information is to be redacted.

**DR 41:**  Allowed only as to the names of the 75 sample employees appearing on the spreadsheet (Dkt. No. 40-6) and the list (Dkt. No. 40-7) that Defendants have produced.

If the discovery Defendants are ordered to produce is electronically stored, it must be produced electronically in the format the EEOC has specified.

To the extent that the motion is allowed, Defendants are ordered to respond on or before **November 20, 2017**.

In addition, the parties are ordered to file a proposed protective order on or before **November 6, 2017**.

Each party to bear its own fees and costs.  *See* Fed. R. Civ. P. 37(a)(5)(C).

It is so ordered.

Dated:  October 30, 2017               /s/ Katherine A. Robertson
                                       KATHERINE A. ROBERTSON
                                       United States Magistrate Judge